THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
WILLIAM JOHNSON, Defendant-Appellant.

First District (1st Division)    No. 76-87

Opinion filed January 10, 1977.

James J. Doherty, Public Defender, of Chicago (Rick Garrity and Richard D. Kharas, *Assistant Public Defenders*, of counsel), for appellant.

Bernard Carey, *State's Attorney*, of Chicago (Laurence J. Bolon, Iris E. Sholder, and William E. Spizzirri, *Assistant State's Attorneys*, of counsel), for the People.

Mr. JUSTICE BUA delivered the opinion of the court:

The defendant, William Johnson, was indicted for aggravated battery. Defendant waived his right to a jury, and after a bench trial upon

stipulated facts was found guilty and sentenced to two years probation. On appeal, defendant contends that he received ineffective assistance of his privately retained counsel at trial. A summary of the stipulated facts follows.

On the morning of January 16, 1974, the defendant, using an electrical cord, whipped his seven-year-old stepson Robert Rodgers, causing welts to appear on Robert's chest and back. Upon arriving at school Robert complained about the whipping to his teacher who notified the proper authorities. Defendant was arrested at approximately 2:45 p.m. on January 16, 1974, and charged with child abuse. Proceedings were begun in both the juvenile and criminal divisions of the Circuit Court of Cook County. The defendant was initially represented in the criminal proceedings by a public defender. On June 3, 1974, attorney Gordon Arnett filed his appearance on behalf of the defendant. Subsequently, on June 20, 1974, and September 27, 1974, attorney Samuel Broyde, an associate of Arnett, appeared on behalf of the defendant. Mr. Broyde had previously been engaged to represent the defendant in the juvenile proceedings. On October 28, 1974, after Mr. Arnett withdrew as attorney, Mr. Broyde, at the defendant's request sought leave of court to enter his appearance as defense counsel. At that time Mr. Broyde also requested payment of the statutory fee for representing an indigent defendant. Thereafter, on October 31, 1974, the court entered an order, based upon the defendant's affidavit of indigency, appointing Samuel Broyde as defense attorney. The order was silent as to attorney fees.

On January 3, 1975, Mr. Broyde presented motions to suppress any physical evidence seized illegally and to suppress any confessions or admissions the defendant may have made either to the arresting officers, State social workers, or while testifying under oath in the juvenile proceedings. At this hearing the defendant testified that at the time of his arrest he was not advised of his rights nor of the charges against him. Notwithstanding the State's motion for a continuance in order to present the testimony of the arresting officers, the court denied the motion to suppress. Mr. Broyde next moved to suppress any statement defendant made to State social workers or while under oath during the juvenile proceedings on grounds that they were made under duress. During the State's cross-examination, the defendant testified that at the juvenile hearing he was both represented by counsel (other than Mr. Broyde) and that his testimony therein was voluntary. Defendant also testified that all conversations with State social workers were voluntary. Upon the defendant's testimony the court denied the motion to suppress the admissions. Mr. Broyde then moved to suppress the electrical cord used to whip Robert Rodgers. The defendant's wife testified that two police officers came to her door and asked her to produce the weapon used in

the whipping, whereupon she left the room which the police had entered, opened a kitchen drawer, removed the cord, and, returning, gave the cord to the officers. The court held this to have been a consent search.

At the trial, on May 6, 1975, prosecution and defense counsel stipulated to all the evidence. The stipulated evidence was in accord except the police denied that defendant had not been advised of his rights at the time of his arrest; and the defendant claimed he whipped Robert as punishment for stealing money and other misdeeds whereas Robert contended he was whipped for wetting his bed. The sole issue tried was whether or not the battery inflicted on Robert Rodgers constituted aggravated battery. From the stipulated evidence the court found the defendant guilty of aggravated battery and entered judgment on its decision. On June 5, 1975, the court sentenced defendant to two years probation.

Thereafter, Mr. Broyde filed a petition and supplemental petition for the allowance of attorney fees in excess of the statutory limit. The petitions were denied. Mr. Broyde was then granted leave to withdraw as counsel for the defendant and the public defender was appointed to represent defendant on appeal.

On appeal defendant contends that he received ineffective assistance of counsel in that his counsel stipulated to the facts of the case and that this stipulation was motivated not as a sound trial tactic but rather out of concern for the adequacy of his compensation.

■■■ To show ineffective assistance of counsel at trial the defendant must clearly establish: (1) actual incompetence of counsel, as reflected by the manner of carrying out his duties as a trial attorney; and (2) substantial prejudice resulting therefrom, without which the outcome would probably have been different. (*People v. Stepheny* (1970), 46 Ill. 2d 153, 157, 263 N.E.2d 83; *People v. Morris* (1954), 3 Ill. 2d 437, 449, 121 N.E.2d 810; *People v. Ashley* (1966), 34 Ill. 2d 402, 411, 216 N.E.2d 126.) In addition, where, as here, counsel has been privately retained, there must be a showing of extraordinary incompetence. (*People v. Rodrigquez* (1970), 126 Ill. App. 2d 231, 235, 261 N.E.2d 762.) Extraordinary incompetence of private counsel is that assistance which is "of such a low calibre as to amount to no representation at all or reduces the court proceedings to a farce or a sham, in which case defendant is denied a fair trial." (*People v. Riojas* (1970), 47 Ill. 2d 47, 49-50, 265 N.E.2d 865, quoting *People v. Bliss* (1970), 44 Ill. 2d 363, 369-70, 255 N.E.2d 405.) A careful examination of the record evinces no showing that the conduct of defendant's privately retained counsel, in his numerous court appearances on behalf of his client, amounted to anything approaching such a low calibre so as to reduce the defendant's trial to a farce or a sham. On the contrary, the record supports a finding that defense counsel was

meticulous in his advocacy throughout the discovery and trial stages of the instant case. Mr. Broyde filed and most forcefully argued pretrial motions to suppress physical evidence and any confessions or admissions made by the defendant prior to his appointment as counsel at defendant's request. At trial, defense counsel was careful to see that the stipulations entered of record establish that in so stipulating counsel was motivated by other than judgmental factors based upon his professional expertise. Matters going to the exercise of counsel's judgment and discretion and trial tactics are insufficient to establish incompetence of counsel. (*People v. Newell* (1971), 48 Ill. 2d 382, 387, 268 N.E.2d 17; *People v. Washington* (1968), 41 Ill. 2d 16, 241 N.E.2d 425.) Moreover, in construing a stipulation courts look to the actual intention of the parties, and will, absent a showing that the stipulation is a result of fraud or is unreasonable or contrary to public morals, enforce them. (*Kazubowski v. Kazubowski* (1968), 93 Ill. App. 2d 126, 235 N.E.2d 664.) The record herein indicates that counsel stipulated in order to minimize the cumulative effect of the State's overwhelming evidence and not in order to defraud the defendant. Nor can we now say that faced with defendant's own admissions, including testimony under oath, counsel's trial tactics in stipulating to the evidence were unreasonable.

■■ Defendant's next contention that his counsel's advocacy was ineffective because of a concern for the adequacy of his compensation is without merit. Subsequent to raising the issue of attorney fees on October 31, 1974, the question did not arise until November 24, 1975, some five months after defendant was sentenced. Thus, until November 24, 1975, the record shows no evidence that defense counsel was in any way concerned over his compensation, the amount having been left unsettled from October 31, 1974, to that date. There is no basis in fact for defendant to now urge, on review, that his counsel's actions were in anyway colored by a concern for his fees.

For the foregoing reasons the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

McGLOON and O'CONNOR, JJ., concur.