THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* THURMAN GRIFFITH, JR., Defendant-Appellant.

Fifth District   No. 77-258

Opinion filed January 26, 1979.

Michael J. Rosborough and Phillip A. Kramer, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Clyde L. Kuehn, State's Attorney, of Belleville (Robert C. Perry and Jane F. Bularzik, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE KUNCE delivered the opinion of the court:

Defendant-appellant Thurman Griffith, Jr., was found guilty of murder after a jury trial in the Circuit Court of St. Clair County, and was sentenced to a term of 25-75 years in the penitentiary. On appeal, he claims that the cumulative prejudicial effect of evidentiary errors by the trial court, ineffective representation by defense counsel, and improper argument by the prosecutor deprived him of a fair trial. We affirm the judgment and sentence of the court below.

The evidence adduced at trial revealed that the defendant and one Johnnie Freeman decided in the early morning hours of October 24, 1976, to rob a patron of the Avalon Lounge in East St. Louis. After obtaining a sawed-off shotgun, they accosted their victim outside the lounge, led him

into an alley, searched him for money, and took his hat and coat. A shot was fired, Freeman and the defendant fled into a waiting car, and the victim was found dead in the alley. His death was caused by a shotgun wound into the chest wall which extended into the right lung and caused a massive hemorrhage.

At the hearing on the defendant's motion to suppress his confession, Illinois State Police Detective Delaney testified that a confidential informant told him on the morning of October 27 that she had talked to both the defendant and Freeman after the killing. She told Delaney that the defendant had admitted to her that he had shot a man and taken a black hat from him, and that Freeman had taken the victim's leather coat. She had observed blood on the defendant's hands and trousers.

At trial, Delaney testified that later on the morning of October 27 he and another officer went to the defendant's apartment. They had information that the defendant was present and armed. After identifying themselves numerous times, and requesting that the door be opened, the officers forced their way into the apartment. The defendant was not present, but on the floor in an open closet lay a pair of blood-stained levis which matched the informant's description of the defendant's clothing on the night in question. Subsequent laboratory tests indicated the presence of human blood.

The defendant was arrested about 3 p.m. on October 27. The police had not obtained either an arrest warrant or a search warrant. No pretrial motion to suppress the blood-stained levis was filed by defense counsel. They were admitted into evidence over objection.

About 4:30 p.m. on October 27, the defendant was informed of his constitutional rights against self-incrimination and signed a waiver of those rights. Upon initial interrogation about the homicide, he denied any knowledge or involvement. However, after having been confronted with a statement which had been obtained from Johnnie Freeman, he gave an oral statement which was reduced to writing and signed by him. In the statement, the defendant admitted to his participation in the armed robbery, but attempted to blame Freeman for firing the shot which killed the victim. He stated in part:

"* * * [W]e both circled the building in opposite directions and met in the front and that's when Freeman started talking to the dude that we were going to rob because he was standing in front of the building. Freeman grabbed the dude by the arm and began to walk him behind the Avalon towards the alley and with that I grabbed the dudes other arm and we finally got him in the alley by an old burnt out shed.

This dude kept saying that he didn't have any money and that he knew John and why was he doing him that way because Freeman

had hit him in the head several times with the shot gun. Freeman kept insisting that the guy had money and he made him take his shoes off and his leather jacket and a ring or rings and I then told Freeman to come on he didn't have any money.

At that point I began to walk away but first I picked up the dudes Black Felt Knox Hat that had dropped off his head and was walking down the alley when I heard a shot. I didn't turn around but I began to run West in the alley towards 12th St.

Freeman caught up with me and handed me the shot gun and to throw it away but before I could his girlfriend came up the alley in the car and we got in and I gave the gun to one of the young dudes in the car and they drove me to Gray Blvd where I got out and went to a friend house where I stayed for a while and then I went home on North 14th St.

Later the same morning I got up and was going over to a friend house in the South End and I had the Black Knox Hat with me that I threw in the weeds near 15th and 16th and Boismenue. Also that same day while at Azell Manleys house I heard that the dude behind the Avalon had been killed."

Freeman, who had negotiated dismissal of murder charges against him in exchange for his testimony at the defendant's trial and a plea of guilty to armed robbery, testified in substance that the defendant held the shotgun on the victim while Freeman searched him. After Freeman determined that the victim did not have any money, he left with the victim's leather coat. A few seconds later, he heard a shot. After he and the defendant were both back in the car, the defendant told Freeman that the victim had grabbed the gun.

In this court, the defendant urges vigorously that the levis introduced into evidence were the tainted fruit of an unconstitutional warrantless search of the defendant's apartment, and therefore should not have been introduced into evidence. He argues alternatively that admission of this evidence was plain error, and that the failure to file a motion to suppress this evidence before trial amounted to ineffective assistance of counsel.

■ We cannot agree. When the officers arrived at the defendant's apartment, they clearly had probable cause to arrest him, and the circumstances known to them at that time justified their warrantless entry. (*People v. Johnson*, 45 Ill. 2d 283, 259 N.E.2d 57 (1970); *People v. Sprovieri*, 43 Ill. 2d 223, 252 N.E.2d 531 (1969).) The levis discovered in plain view during the attempt to make a valid arrest were admissible into evidence. *People v. Sprovieri; People v. Barbee*, 35 Ill. 2d 407, 220 N.E.2d 401 (1966).

■ Even had this evidence been erroneously admitted, the failure of defense counsel to file a motion to suppress would not have amounted to

incompetency of counsel under any standard. In light of the defendant's own voluntary statement, which amounted to a confession to the offense of felony murder, nothing that counsel did or failed to do concerning the levis could have affected the outcome of this case.

As the jury was properly instructed, if the defendant or a person for whose conduct he was accountable performed the act which caused the death of the victim while committing the crime of armed robbery, the defendant was guilty of murder (Ill. Rev. Stat. 1975, ch. 38, par. 9—1(a)(3)). Under our law, a person is legally accountable for the conduct of another when, with the intent to promote or facilitate the commission of an offense, "he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." Ill. Rev. Stat. 1975, ch. 38, par. 5—2(c).

So far as the defendant's guilt of felony murder is concerned, it is immaterial whether he or Freeman was telling the truth about who shot the victim of their robbery. The law deems them both equally guilty of murder. *People v. Johnson,* 55 Ill. 2d 62, 67, 302 N.E.2d 20, 23 (1973); *People v. Hickman,* 59 Ill. 2d 89, 319 N.E.2d 511 (1974); *People v. Allen,* 56 Ill. 2d 536, 309 N.E.2d 544 (1974); *People v. Gregory,* 43 Ill. App. 3d 1052, 357 N.E.2d 1251 (1st Dist. 1976); *People v. Smith,* 53 Ill. App. 3d 395, 368 N.E.2d 561 (1st Dist. 1977).

We find totally unpersuasive the defendant's contention that, but for the introduction into evidence of the blood-stained levis, the jury could have found him not guilty of felony murder because of his withdrawal from the criminal enterprise. The contention is based solely upon that part of the defendant's statement in which he indicated he told Freeman to leave, and started walking away, after they determined that the victim had no money. Section 5—2(c)(3) of the Criminal Code of 1961 provides in pertinent part that one who has participated in the planning or commission of an offense is not accountable for the offense if:

> "Before the commission of the offense, he terminates his effort to promote or facilitate such commission, and does one of the following: wholly deprives his prior efforts of effectiveness in such commission, or gives timely warning to the proper law enforcement authorities, or otherwise makes proper effort to prevent the commission of the offense."

Here, quite obviously, the defendant did none of the things required by the statute, and the jury could not properly have accepted his defense of withdrawal. Even if the defendant's statement were accepted at face value, it amounted to an admission that the armed robbery had already been completed and the defendant was making his escape with one of the fruits of the robbery at the time the victim was killed. The defendant need not be actually present at the killing to be guilty under the felony

murder doctrine. If the killing is in the course of the escape, it is within the operation of the doctrine. *People v. Johnson*, 55 Ill. 2d 62, 67, 302 N.E.2d 20, 23 (1973), and cases cited therein.

We have examined the defendant's other contentions of error and find them to be without merit. After careful consideration of the entire record, we conclude that the defendant received a fair trial and was proved guilty of murder beyond a reasonable doubt. Therefore, the judgment of the Circuit Court of St. Clair County is affirmed.

Affirmed.

G. J. MORAN, P. J., and KARNS, J., concur.