(No. 36878.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN H. ARMES, Plaintiff in Error.

*Opinion filed May 27, 1963.*

HAROLD B. CULLEY, JR., of West Frankfort, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and JOSEPH W. HICKMAN, State's Attorney, of Benton, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, of counsel,) for the People.

Mr. JUSTICE DAILY delivered the opinion of the court:

The defendant, John H. Armes, was found guilty of forgery by a jury in the circuit court of Franklin County and was sentenced to the penitentiary for a term of 7 to 14 years. He prosecutes this writ of error to review the judgment of conviction, contending that the crime of forgery was not proved, and that the trial court erred in hearing evidence in aggravation and mitigation.

It appears from the evidence that defendant called at the Crown Finance Company in Benton, Illinois, on April 21, 1956, and applied for a loan. He there represented himself to be William Kelley, and that he was employed as a coal miner in West Frankfort. When the loan company checked with the mine, and looked into the credit records of William Kelley, it appeared there was such a person with that name. Thereafter, defendant executed a promissory note, to which he signed the name "Wm. Kelley," and received $500 from the company. To secure the payment of the note defendant also executed a chattel mortgage and a wage assignment using the name of William Kelley.

The real William Kelley was in fact the uncle of the defendant, and it appears that the latter was permitted to stay in the uncle's house after defendant's release from the

penitentiary on April 11, 1956. He was still there some days later, and had a key to the house, when the uncle and his wife went to Detroit, Michigan, for a visit. In the house were various papers made out in the name of William Kelley and when the uncle returned from his visit, both the defendant and some of the papers were gone.

Defendant testified that on the same day his uncle left for Detroit, he, the defendant, also left the house and went to St. Louis. He denied that he had taken any of his uncle's papers, and stated that he had not been in Franklin County on April 20 or 21, 1960; that he had departed a couple of days before; that he did not know where the Crown Finance office was and had never been there; and that he had never negotiated a loan there or received any money from the company. In addition, he expressly denied that he had signed the promissory note bearing the name of William Kelley, but did agree that the signature thereon was not that of his uncle.

Two employees of the finance company positively identified defendant as the person who had negotiated the loan, and who had signed the name of William Kelley to the note, chattel mortgage and wage assignment. The uncle, William Kelley, testified that he lived in West Frankfort, that he had never applied for a loan at the finance company, and that none of the signatures on the loan documents were his.

The indictment returned against defendant charged that he had wilfully, unlawfully, falsely, fraudulently and feloniously made a promissory note in the sum of $500 in the execution of which he had counterfeited the handwriting of one William Kelley with intent to defraud and damage the Crown Finance Corporation, and that with the forged or counterfeit handwriting of William Kelley and the forged, false and counterfeit promissory note he had obtained from the corporation the sum of $500. Looking to the allegations of the indictment, to the dictionary definition of the verb

"counterfeit," and to the proof, defendant insists that the crime of forgery was not proved because, whereas the indictment alleges that he had counterfeited the name of William Kelley, the proof shows he made no attempt to actually copy or imitate any signature. Such a contention is met, however, by our decision in *People* v. *Katz*, 356 Ill. 440, at 444, where we pointed out that our forgery statute (Ill. Rev. Stat., 1955, chap. 38, par. 277,) "makes no distinction between making, altering or counterfeiting an instrument with intent to prejudice, and in uttering, publishing and passing as true and genuine any such forged instrument with intent to damage or defraud, knowing the same to be false, altered, forged or counterfeit. Every person who is guilty either of making and forging or uttering and passing, or attempting to utter and pass, under the conditions named in the statute, is guilty of forgery." To constitute forgery, the *Katz* opinion states, the three following elements must exist: (1) there must be a false writing or alteration; (2) the instrument as made must be capable of defrauding; and (3) some act must be done showing an intent to defraud.

The indictment in this case charges the crime of forgery substantially in the language of the statute and the most that can be said is that the term "counterfeited" included in the charge was surplusage and may be disregarded. (Cf. *People* v. *Figgers*, 23 Ill.2d 516, 519; *People* v. *Katz*, 356 Ill. 440, 444-445.) The balance of the indictment charges all the elements essential to the offense under the statute and, in like manner, the proof in the record establishes the three essential elements beyond a reasonable doubt.

After the jury had found defendant guilty the trial court conducted a hearing in aggravation and mitigation, to which no objection was made, and it is now contended this was error inasmuch as statutory authority for such a hearing then existed only in cases where an accused had entered a plea of guilty. While this problem can no longer arise under

the newly enacted Criminal Code, there can no longer be any question since our decision in *People* v. *Spann,* 20 Ill.2d 338, that hearings in aggravation and mitigation are not improper subsequent to a finding of guilty by either a jury or a court.

Defendant, an indigent person, was furnished with a transcript of the proceedings at his trial in accordance with Rule 65—1 of this court (Ill. Rev. Stat., 1961, chap. 110, par. 101.65—1,) and it is now contended that his right to such a transcript, as well as his right to fully present errors relied upon for reversal, has been vitiated by the failure of the transcript furnished to include either the opening statements or closing arguments of counsel. There is nothing in the record or abstract presented which permits us to determine if the opening and closing statements of counsel were in fact taken down by the reporter and made a part of the stenographic transcript. Whatever the case may be, however, other portions of the record reveal that no injustice or unfairness results to defendant. In his written motion for a new trial no error was urged concerning improper argument on the part of the prosecutor, nor does such an error appear to have been raised in his motion in arrest of judgment. We have frequently held that where grounds of a motion for new trial are stated in writing, the accused is limited on review to the errors alleged in the written motion and all other errors are deemed to have been waived. (*People* v. *Hunter,* 23 Ill.2d 177; *People* v. *Flynn,* 8 Ill.2d 116.) Here, even if it be assumed there was improper argument to which objection was made and a ruling preserved, the error was waived by the failure to include it in the grounds of the written motion for a new trial and the question cannot properly be raised in this court.

The judgment of the circuit court of Franklin County is affirmed.

*Judgment affirmed.*