(No. 37580.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JERRY CLEMENTS, Plaintiff in Error.

*Opinion filed September 27, 1963.*

WISEMAN & HALLETT, of Alton, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and JOSEPH W. HICKMAN, State's Attorney, of Benton, FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, of counsel,) for the People.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

The defendant, Jerry Clements, was convicted of the crime of burglary by a jury in the circuit court of Frank-

lin County and was sentenced to the penitentiary for a term of from 2 to 10 years.

On March 30 or 31 in 1959, about 5:00 P.M., the defendant, in the company of two friends, John Eldridge and Gary Shoemaker, left East Moline, where the defendant worked, for West Frankfort, Illinois, in the defendant's car, arriving there around 3:00 A.M. the next day. That evening the three met again in West Frankfort and began to drink. Later in the evening they decided to drive to Benton in the defendant's car, arriving there at 11:00 P.M. Eldridge and Shoemaker testified that they were all drinking quite heavily and that while in Benton the two of them broke into Rogers' filling station and took various items of personal property. The defendant, they testified, waited for them in his car and did not enter the building. These items were thereupon taken by them to West Frankfort by a back road so as to avoid traffic, and placed in Eldridge's father's home. The three then returned to Benton, and Eldridge and Shoemaker broke into Chick's Market, the crime for which the defendant was found guilty. Again according to Eldridge and Shoemaker, the defendant simply waited in his car and did not go inside the store. However, Eldridge testified that the defendant knew what he and Shoemaker were going to do when they got out of the car, although he did not remember whether they talked over a specific plan. Both accomplice witnesses testified that they split the money taken from the market three ways and that the defendant was handed his one-third share of the stolen money. All three stayed all night at Eldridge's father's home where the proceeds of the burglaries were stored. They were arrested by the sheriff the next day on the Old Marion Road after they had visited several taverns and had spent the stolen money.

Eldridge and Shoemaker pleaded guilty to one of the two burglaries committed by them and were placed on probation.

William Barminski testified that he was the owner of Chick's Market and lost cigarettes and a little change, about three or four dollars, and several pairs of gloves.

The sheriff, Barney Browning, testified that he arrested the defendant and two accomplices; that prior to the arrest they ran upon seeing his car; that he obtained a search warrant and found the stolen articles at John Eldridge's father's home in West Frankfort and that he took the same into his possession.

The defendant, who was 18 years of age at the time of the crime, testified that after drinking he became sick and went to sleep in the back of the car where he was at the time of the burglaries; that he did not know anything that happened; and that he did not receive any of the proceeds of the burglaries. He claims that the next thing he remembered after falling asleep in the car, was waking up at 5:00 in the morning in John Eldridge's home. The defendant volunteered on direct examination that he had repeatedly been arrested for similar offenses since he was 14 years of age.

The defendant here contends: (1) that the grand jury was improperly convened; (2) that his conviction, based upon the testimony of admitted accomplices, was not based upon sufficient evidence; and (3) that certain improper instructions were given by the court over defendant's objection and that the court erred in failing to give one of the instructions submitted by the defendant.

The defendant contends that the special grand jury which indicted him was not legally constituted because it consisted of only 21 persons, being the total that reported to the court for duty. These 21 were impanelled as the grand jury and returned the indictment. It is contended that there was not a supplemental panel and no other jurors were summoned to make up a total panel of 23 as required by statute. (Ill. Rev. Stat. 1961, chap. 78 par. 16.) However, no motion challenging the array or to quash the

indictment was made by the defendant before the trial court and his objection to the formation of the grand jury, made for the first time on appeal, comes too late. *People* v. *Lieber*, 357 Ill. 423.

The People's two principal witnesses, Eldridge and Shoemaker, were both accomplices, and both had previously pleaded guilty to one of the two burglaries committed by them on the same night. They freely testified that they were given probation, had violated the terms of their probation, and had been sentenced to the penitentiary and were out of the penitentiary at the time of trial. Nothing whatsoever in the record indicated that they testified in the hope of evading prosecution or in the hope of reward. Although the testimony of admitted accomplices must be reviewed with suspicion and acted upon with caution, such testimony, if believed by the trier of fact, is sufficient to sustain a conviction. (*People* v. *Neukom*, 16 Ill.2d 340.) Here both accomplices testified that Clements drove the car and shared in the loot. Their testimony is corroborated to a large extent by the defendant himself, who admitted being with the two accomplices on the evening in question about the time of the burglaries and admitted driving his car to and from West Frankfort and Benton and staying all night at Eldridge's father's home where a portion of the loot was stored. His claim that he was asleep at the time of the burglary and did not share in the proceeds thereof was for the jury to evaluate and its determination, unless clearly in error, will not be set aside by a reviewing court.

The trial court refused to give the defendant's offered instruction regarding the effect to be given the testimony of a witness who has a previous felony conviction. However the court did give five other cautionary instructions regarding the suspicion with which accomplice testimony should be viewed and expressly stated at the conference on instructions that he felt the defendant's offered instruction was repetitious. The felony conviction referred to in the de-

fendant's instruction involved one of the burglaries committed on the same evening by the defendant and the two accomplices, the circumstances of which were all well known to the jury. The two accomplices did not state to which burglary charge they pleaded guilty and the defendant at no time offered into evidence the record of their convictions. Under these circumstances the failure to give this instruction was not prejudicial to the defendant and did not constitute reversible error.

The court gave an instruction that the jury could take into consideration the defendant's alleged flight from the scene of the crime, as well as a similar instruction concerning his absenting himself from the county in order to avoid discovery. The defendant did not object to the instruction as to the defendant's alleged flight from the scene of the crime, which instruction does not appear to be substantially defective, and the propriety of giving this instruction cannot now be raised. (*People* v. *Minor,* 20 Ill.2d 496; Ill. Rev. Stat. 1961, chap. 110, par. 101.25.) It was stipulated between the defendant and the State that the long delay in bringing this case to trial (from April 1, 1959 to March 6, 1962) was due to the fault of the defendant and not the prosecution. The sheriff of Franklin County testified that the defendant "jumped bond" and did not show up for his scheduled arraignment on February 4, 1961, and consequently was not arraigned until the sheriff, who was appointed the agent of the surety on the defendant's bond, caught him at Carpentersville, Illinois, in 1962 and returned him. Under these circumstances it was not error to instruct the jury as to the effect of the defendant's having left the county in order to avoid prosecution.

The defendant further contends that none of the money or other property taken from the store was found in his possession at the time of his arrest and therefore that it was error to instruct the jury that a conviction could be based upon his recent and unexplained possession of the stolen

property. The evidence established the defendant's presence at the scene of the crime and that shortly thereafter, according to the testimony of the accomplices, he was in possession of a portion of the property taken in the burglary. The court was, therefore, justified in instructing the jury as to the effect of such possession. *People* v. *Bennett,* 3 Ill.2d 357.

The defendant finally contends that the trial court's giving of an instruction as to the liability of an accessory before the fact was error. The evidence established that the defendant did not actually break into the building, but the testimony of the two accomplices did show that the automobile used belonged to the defendant; that the defendant drove the accomplices in his automobile to and from the scene of the crime; and that he held the car in waiting while the burglary was committed. Thus it was established by this evidence that the defendant did aid, abet, and assist his cohorts in the burglary and this proved him to be at least an accessory before the fact. The law of this State is that there is no distinction between an accessory before the fact and a principal, and both may be punished in the same manner. Therefore, prejudicial error could not have resulted to the defendant in the giving of the questioned instruction.

The judgment of the circuit court of Franklin County is affirmed.

*Judgment affirmed.*