THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GREGORY JONES, Defendant.—(KENNETH MAJORS, Defendant-Appellant.)

Fourth District   No. 15547

Opinion filed July 15, 1980.

CRAVEN, J., dissenting.

Richard J. Wilson and Jeffrey D. Foust, both of State Appellate Defender's Office, of Springfield, for appellant.

Robert J. Bier, State's Attorney, of Quincy (Mark D. Towler and Larry Wechter, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE TRAPP delivered the opinion of the court:

Kenneth Majors (defendant herein) appeals his conviction, after jury verdict, upon a charge of burglary (Ill. Rev. Stat. 1977, ch. 38, par. 19—1) and a sentence of 4 years imposed.

The conviction of defendant was upon the theory of his accountability for the acts of a co-defendant, Jones, constituting the burglary. The latter negotiated a plea of guilty to misdemeanor theft and was sentenced to probation.

The defendant raises five issues on appeal, arguing that (1) the State failed to prove him guilty beyond a reasonable doubt, (2) the trial court's refusal to call Jones as a court's witness denied him a fair trial, (3) the prosecutor's comments concerning accountability made during closing arguments denied him a fair trial, (4) a policeman's hearsay testimony regarding an out-of-court identification of the defendant violated his rights of confrontation, and (5) the trial court abused its discretion by imposing an excessive sentence.

Because the defendant questions the sufficiency of the evidence, a recitation of the trial testimony is necessary. Judy Sharp testified that on May 8, 1978, she was in the parking lot of a K-Mart store in Quincy, Illinois. While walking toward her car, she saw a man holding a CB radio get into a bluish-green van bearing Missouri license plates that was parked next to her car. Through the front windshield of the van she saw

two men, a woman, and a baby. Believing that the man had just stolen the CB radio in her car, Sharp ascertained the license number, yelled at the persons, and then ran back inside the store.

Sharp's further testimony disclosed that at the Quincy police station she chose two pictures from a lineup of photographs. She made an in-court identification of the defendant as one of the two men in the van, but she could not "say for definite."

On cross-examination, Sharp testified that she saw Jones and not the defendant holding the CB radio. She also testified that at the time of the photographic lineup, her identification of the defendant as one of the two men in the parking lot was certain, although during the trial she was less certain.

Barry Taber testified that on May 8, 1978, he was sitting in his truck in the same K-Mart parking lot. He saw a woman walk toward her car, stop, shout, and then run back toward the store. A man then ran to Taber's truck and told Taber to get the police on his CB radio, which he tried to do. Parked one lane away from the defendant, Taber saw the van, light blue with Missouri plates. While continuing to try to reach the police, Taber followed the van; they went through the intersection of 30th Street and Katherine Road; they reached the corner of 12th and Locust Streets, where the van pulled into a gas station. Taber drove down the block, turned around, and came back. By that time the van had moved across the street to the parking lot at the Pepsi-Cola bottling plant. A police car then pulled up next to the van. Taber testified that he had observed the van without interruption during the entire trip from the K-Mart lot to the Pepsi-Cola lot. On cross-examination, Taber testified that the van left the lot after Sharp began shouting. Taber did not see any of the persons in the van, however, or even know how many were in it. While he was turning his truck around, he did not watch the van.

Officer Simons of the Quincy police department testified that on May 8, 1978, he received a call for assistance and intercepted and stopped a van matching the description given him over the radio. The van's driver denied that he had been in the K-Mart parking lot, and Simons did not see the CB radio inside of the van. Inside the Pepsi-Cola bottling plant, Simons found Jones, who matched the given description of the second man in the van. Simons arrested the two men; at trial, he identified the defendant as the driver of the van.

Officer Fletcher of the Quincy police department testified that he and another policeman searched the roadside near the intersection of 30th Street and Katherine Road. Fletcher was about 100 feet away from his partner when the partner found the radio near the side of the road.

Officer Busse of the Quincy police department testified that at a lineup of photographs, Sharp identified the defendant as the driver of the

van she had seen in the K-Mart parking lot and Jones as the man who had taken the CB radio. Defendant did not object to any of this testimony.

Defense counsel moved that Jones be called to testify as a court's witness. In the absence of the jury Jones was called to the stand to lay the necessary foundation. Jones testified that he, the defendant, the defendant's wife and the wife's baby were riding in the van on May 8, 1978. They drove through the K-Mart parking lot looking for CB radios to steal and stopped at an unlocked car, from which Jones took a CB radio. Jones testified that when a woman began shouting they left in the van, and he threw the radio out of the van along Katherine Road. Jones got out of the van at a gas station.

Jones' further testimony revealed that he had discussed the crime with two persons, the defendant's father and the defendant's first attorney. On May 9, 1978, he told defendant's father that he, Jones, had taken the radio. Jones denied telling the defendant's father that the defendant had not been involved in the crime. He told defendant's father that he would testify that he had taken the radio, but denied saying that he would testify that the defendant had had nothing to do with the crime.

Jones also testified that on November 13, 1978, he spoke with his then attorney. Jones denied talking to the police about testifying for the defendant. In a statement signed in the State's Attorney's office on November 13, 1978, Jones declared that he was drunk at the time of the burglary and that the defendant had devised the plan. As a result of the statement, the State dropped the burglary charge against Jones, who pleaded guilty to misdemeanor theft. Yet Jones testified during the hearing on the defendant's motion to have Jones declared a court's witness that they had developed the plan jointly.

The defendant's father then testified, also outside the jury's presence, to help lay the foundation for calling Jones as a court's witness. The father testified that on May 9, 1978, Jones told him that the defendant had had "nothing to do with the incident," and that Jones would testify to that fact. The father also testified that Jones repeated this to him on that morning, minutes before the trial began.

The defendant's attorney at the time of trial avowed that if the defendant's first attorney was present, he would testify that on November 13, 1978, Jones had told him that the defendant had not been involved in the burglary. The State's Attorney added that the attorney had not explained to Jones the principles of accountability.

The court denied the defendant's motion to have Jones declared a court's witness.

The defendant first argues that the State has not proved beyond a reasonable doubt his accountability for the burglary committed by Jones. According to section 5—2(c) of the Criminal Code of 1961 (Ill. Rev. Stat.

1977, ch. 38, par. 5—2(c)), to render the defendant accountable for the act of another, the State must prove that the defendant aided another before or during the commission of the crime with the intent to help the other person commit the crime. The defendant argues that the State failed to prove any of the elements of accountability.

Given the facts in this case and the case law on accountability, we cannot say that the State failed as a matter of law to prove defendant's guilt beyond a reasonable doubt. The province of a jury is to determine questions of fact; the importance of the jury's role is enlarged when the questions are difficult and close. We cannot reverse a jury's verdict merely because others could or would decide the question differently.

■■ Nonparticipation in the crime is a defense to accountability even when one is conscious of a crime being committed in his presence. Mere presence at the scene of a crime is insufficient to render one liable for the acts of another. (*People v. Tillman* (1971), 130 Ill. App. 2d 743, 265 N.E.2d 904.) Even consent to or knowledge that a crime is being committed will not make one accountable. (*In re Interests of Dugan* (1972), 9 Ill. App. 3d 58, 291 N.E.2d 303.) A person conscious that a crime is being committed in his presence will not be held accountable merely for failing to oppose or stop the crime (*People v. Barnes* (1971), 2 Ill. App. 3d 461, 276 N.E.2d 509), unless, of course, he has a legal duty to intervene.

To prove accountability, the State generally relies upon an inference from different patterns of premises. A common design or plan agreed to by the defendant is sufficient proof of accountability. The agreement itself may be proved circumstantially. (*People v. Richardson* (1965), 32 Ill. 2d 472, 207 N.E.2d 478.) Acting as a lookout is sufficient aiding and abetting to render one accountable for the crimes committed by the more active party. *People v. Krouse* (1975), 30 Ill. App. 3d 446, 333 N.E.2d 17.

The driver of a getaway car is also accountable. (*People v. Daniels* (1977), 51 Ill. App. 3d 545, 366 N.E.2d 1085; *Barnes*; *Richardson*.) Although driving the car away from the scene obviously occurs after, rather than before or during the crime, this does not make the driver any the less accountable. The driver has rendered aid during the commission of the crime because his acts play an important part in the implicit plan. His knowing participation in the crime is closely linked to the crime's success; one who does not join the crime until later, at common law an accessory after the fact, is guilty only of obstructing justice. When the plan, express or implicit, calls for a person to sit in a car while the crime is being committed and then to spirit the others away from the scene, the driver's participation is deemed to occur during the commission of the crime, not after.

■■ In this case, the jury heard evidence identifying the defendant as the

driver of the van parked next to Sharp's car, that he waited while Jones entered the car and stole the radio, and that he then drove Jones away from the scene. Even though the defendant himself did not take the radio, the jury's verdict that the defendant's participation made him accountable for the burglary is not subject to a reasonable doubt as a matter of law.

The defendant next argues that the trial court should have declared Jones a court's witness, pursuant to the common law practice of this State. A witness is made the court's, impeachable by either side, when the proposing party cannot vouch for the witness' accuracy, yet his testimony is closely related to the issues in the case and is necessary to avoid a miscarriage of justice. (*People v. DeFord* (1978), 59 Ill. App. 3d 942, 376 N.E.2d 97; *People v. Chitwood* (1976), 36 Ill. App. 3d 1017, 344 N.E.2d 611; *People v. Moriarity* (1966), 33 Ill. 2d 606, 213 N.E.2d 516.) The defendant believes that Jones could have put the State's case in doubt by recounting the events leading up to the burglary. As hearsay, the father could not testify to the statements except to impeach Jones.

The defendant seems to find this promised by Jones' remarks to his father and to the State's Attorney to the effect that the defendant had not been involved in the crime. Yet the case principally relied upon by the defendant, *People v. Mostafa* (1971), 5 Ill. App. 3d 158, 274 N.E.2d 846, is distinguishable. In *Mostafa*, the intended witness first made and then later retracted a written statement that negated the theory of the case that the defendant had solicited murder. Thus, the statement would have exonerated the defendant, and the failure to declare him a court's witness denied defendant the only witness that could have cleared him. Nothing in the allegedly inconsistent statement of Jones tended to contradict the testimony of the witnesses called by the prosecution. Jones denied telling others that the defendant had not been involved. As the trial court pointed out, the defendant's sole purpose in seeking to have Jones declared a court's witness was to impeach him with the prior and allegedly inconsistent statements made to the defendant's father.

■ The defendant's father testified at the hearing that Jones had told him "that [the defendant] had nothing to do with the incident and that he—it was all on [Jones'] own part * * *" yet nothing in what Jones said would have thrown the State's case into doubt, which purpose underlines the need to allow court's witnesses. (*Mostafa; Chitwood.*) Deciding whether to declare a person a court's witness rests within the discretion of the trial judge; the circumstances in this case show that the trial court's decision on this matter is correct.

The defendant next argues that portions of the prosecutor's closing argument erroneously instructed the jury on the law of accountability. The State made the following closing argument; the portions to which defendant objects are italicized:

"The case is one of accountability, somebody being responsible for the conduct of another, and that's what the judge is going to tell you; that in order to sustain the burden in this case, the State must prove not that particularly this defendant but this defendant or someone for whose conduct he was responsible did this.

*And I submit to you that he was responsible. He was driving the car, and he's responsible for the conduct of the guy who removed this from the car.*

Now, I suppose one could argue that maybe he didn't know what was happening when a guy got out of his van and subsequently removed a CB. Well, he had to get over there and rip it out. And when you're sitting in a car and the guy next door is ripping a CB out of a van or out of a car and has to do that much damage to get it out, I don't think you can contend he didn't know what was happening.

*And then there's another instruction that describes for you what accountability is. Maybe some of you have heard of some of this before, been on jury service before and know what it is. There's going to be a whole lot of lawyer-like words. What it boils down to is did he help him out? Did he help him out, help in the commission of the crime?*

*Well, you're getting the guy away from there and he's getting into your car, your van, and you're driving away. That's participation. That's helping out. And that's why he's accountable.*

\* \* \*

I hope I's quoting Mr. Palmer correctly. He said, 'When he drives away what is his intention when the other guy has ripped the CB off?' No doubt about that. What is his intention when he drives away? To go around the block and bring it back to the owner? To go to the police station? What are the facts in this case? The facts in this case show he got worried and threw it out the window. But *he helped him in the commission by driving the vehicle. And that's all that is necessary for the People to prove in order to sustain their burden of proof.*" (Emphasis added.)

The State argues that the defendant has waived this issue by failing to object to the closing arguments and by failing to raise the issue in the post-trial motion for a new trial. (*People v. Moore* (1973), 55 Ill. 2d 570, 304 N.E.2d 622; *People v. Armes* (1963), 28 Ill. 2d 83, 190 N.E.2d 812.) The defendant argues that the remarks are so prejudicial that they constitute plain error, noticeable by this court under Supreme Court Rule 615(a). Ill. Rev. Stat. 1977, ch. 110A, par. 615(a); *People v. Sullivan* (1978), 72 Ill. 2d 36, 377 N.E.2d 17.

■ An examination of the substance of the remarks is necessary to determine whether they are plain error. The defendant argues that the remarks made by the prosecutor attempted to eliminate the element of intent from the accountability theory. While the judge alone may instruct the jury as to the law (*People v. Campbell* (1973), 13 Ill. App. 3d 31, 299 N.E.2d 439), trial counsel's argument relating to instructions on the law is not *per se* grounds for reversal. Unlike the situation in *People v. Collins* (1971), 49 Ill. 2d 179, 274 N.E.2d 77, the State here did not misstate the facts, the trial judge properly instructed the jury about accountability, the defendant made no objections during trial, and the State's error, assuming one was made, was not as egregious as implying that the defendant had the burden of proving his innocence. In this case, the trial judge correctly explained the law of accountability, advised the jurors that closing arguments are not evidence, and told them that they had to exclude every reasonable theory of innocence before they could find the defendant guilty. Also, defense counsel explained in detail the law of accountability during his closing argument. We find no plain error within the context of Supreme Court Rule 615(a) (73 Ill. 2d R. 615(a), Ill. Rev. Stat. 1977, ch. 110A, par. 615(a)).

The defendant next argues that his constitutional right of confrontation was violated. At trial, Officer Busse identified the defendant as one of the persons Sharp identified in a photographic lineup. Defense counsel made no objection then or when the photograph of the defendant was admitted into evidence.

The identification of the defendant is not a genuine issue upon this appeal, for upon closing argument defendant's counsel stated that it was conceded defendant was the driver of the van.

After Officer Busse testified, Sharp testified that she identified two photographs in a photographic lineup on the day of the burglary. She did not testify, however, that the defendant, or anyone else for that matter, was one of those persons identified. When asked whether anyone in the courtroom was one of the persons in the van at the K-Mart, Sharp responded, "I believe so, I can't say for definite." The defendant contends that the effect of Officer Busse's testimony put Sharp's out-of-court identification of the defendant improperly before the jury without an opportunity for the defense to cross-examine her regarding the identification.

■ ■ ■ This issue has been waived because the defendant failed to object at trial and failed to raise the issue in his post-trial motion. Furthermore, the question of plain error does not arise because no error was committed. Because Sharp's testimony concerning the out-of-court identification followed Officer Busse's testimony on that subject, the defendant

had an opportunity to confront Sharp and cross-examine her on this question. The opportunity to question Sharp satisfies the purpose of the hearsay rule. *People v. Townsend* (1977), 47 Ill. App. 3d 789, 365 N.E.2d 110.

Defendant argues that the sentence was excessive and should be reduced upon review. Case law does not support defendant's argued conclusion that the sentence should be reduced because defendant was convicted upon a theory of accountability. (*People v. Smith* (1977), 53 Ill. App. 3d 395, 368 N.E.2d 561.) As was the fact here, one liable upon a theory of accountability is properly charged as a principal. *People v. Heuton* (1971), 2 Ill. App. 3d 427, 276 N.E.2d 8; *People v. Clements* (1963), 28 Ill. 2d 534, 192 N.E.2d 923.

■ Defendant argues that it was improper to sentence him to a greater sentence than that of a co-defendant, Jones. We can find no rational basis for comparing the sentence imposed for a misdemeanor following a negotiated plea with a sentence imposed upon conviction of a felony. The report of proceedings shows that the trial judge analyzed with care the records of the respective co-defendants. Defendant had two prior convictions for felony, burglary and theft, in Missouri. A sentence of 5 years was imposed upon each. Defendant was upon parole status for such offenses at the time of this burglary. The trial judge measured such facts against the concepts of potential for rehabilitation and the likelihood that defendant would not commit another offense. The co-defendant had been convicted of one offense for which, so far as the record discloses, he paid a fine of some $200. Jones was not on probation or parole at the time of this offense.

At the sentence hearing, counsel argued that defendant should be placed on "work release." As such, "work release" is not an authorized disposition or sentence under section 5—5—3 of the Unified Code of Corrections (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—5—3.) Sections 3—13—1 and 3—13—2 of the Code authorize the Department of Corrections to create programs which are termed "work release." (Ill. Rev. Stat., 1978 Supp., ch. 38, pars. 1003—13—1, 1003—13—2.) As applied to judicial sentences, employment may be an incident of periodic imprisonment. See section 5—7—1 of the Unified Code of Corrections (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—7—1.)

The trial court's colloquy shows consideration of the argument and his conclusion that "work release" was not likely to succeed as to the defendant. There was no testimony in mitigation upon this or any other sentencing issue. An analysis of defendant's employment as shown in the presentence report discloses that in the 3 years preceding the offense, defendant was employed for a total of 40 days divided among three employers. No employer was willing to consider rehiring the defendant. Subsequently, while on bond, defendant was employed by the

municipality of Hannibal, Missouri, for some six months, and that he was terminated for cause and his pay charged with a payment for unspecified tools. Upon such record, the trial court could not reasonably conclude that defendant effectively contributed to the support of his dependents, or would do so in the future.

Section 5—5—4.1 of the Unified Code of Corrections (Ill. Rev. Stat., 1979 Supp., ch. 38, par. 1005—5—4.1) provides that upon appeal "there is a rebuttable presumption that the sentence imposed by the trial court is proper." Upon consideration of the significant factors presented to the trial court, we conclude that the record does not show that the presumption has been rebutted. Upon the same considerations, it cannot be said that the trial court abused its discretion within the rule, reaffirmed in *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882, that a reviewing court may not alter the trial court's sentence in the absence of a showing of an abuse of discretion.

The conviction and sentence are affirmed.

Affirmed.

GREEN, J., concurs.


Mr. JUSTICE CRAVEN, dissenting:

I dissent from that portion of the opinion affirming the defendant's sentence. Class 2 felonies such as burglary permit the trial judge to impose a sentence of imprisonment ranging between 3 and 7 years (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—1(a)(5)). The defendant was sentenced to 4 years' imprisonment for his conviction, which was based entirely upon his accountability for Jones' actions. No one disputes that Jones and not the defendant stole the CB radio from the parked car. The defendant was convicted of burglary only because he drove Jones to and from the scene of the crime. Jones pleaded guilty to misdemeanor theft and was sentenced to one year of probation.

The transcript of the sentencing hearing shows that the trial court considered the following mitigating factors: The defendant's conduct neither caused nor threatened serious physical harm; the defendant did not contemplate that his conduct would cause or threaten serious physical harm; the defendant's conduct was induced or facilitated by another person (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.1(a)(1), (2), (5)). The court did not consider whether imprisonment would entail excessive hardship to his dependents. The record does not show whether the defendant was willing to compensate the victim for the harm caused, although the victim's insurance carrier had already paid the claim arising from the damage done to the car, and the police had recovered the CB

radio. The only aggravating factor considered by the court was the defendant's history of prior criminal activity (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2(a)(3)).

The presentence investigation report said that the defendant was 22 years old. He got married during September 1977; his wife already had a child when she married the defendant. Furthermore, at the time of the sentencing hearing the wife was pregnant, expecting the second child in April 1979. The wife testified at the sentencing hearing that she had a good relationship with the defendant and relied on him greatly for emotional support; he was a good husband and father. The report indicated that the defendant had warm relationships with his parents. The parents recognized their son's personal strengths and weaknesses: Although the defendant was a follower, trusting his friends too greatly, he had never been a discipline problem and was extremely good-hearted. The parents also said that the defendant had no drug or alcohol problems and had a good relationship with his wife.

The defendant had dropped out of high school during the 10th grade; he never served in the military. The majority correctly points out that Horatio Alger would not have approved the defendant's record of employment. The defendant was not working at the time of his arrest; in the past he had worked sporadically, and all his former employers said that they would not rehire him. Yet the character letters concerning the defendant were quite positive. Confirming the parents' assessment, the letters said that the defendant tended to follow others but was good-natured and very kind.

The defendant had received concurrent 5-year terms for theft and burglary in Missouri in 1975; he was paroled after one year in prison. The parole officer had found the defendant very cooperative; this offense was his first violation of the terms of his parole. The parole officer feared that the defendant lacked a sense of responsibility.

The presentence report recommended work release rather than imprisonment.

As the majority opinion says, Jones' presentencing report is more cheerful than the defendant's. Jones has a slightly better work record, and his only conviction of any consequence did not result in imprisonment. Jones' report recommended probation. The majority ignores, however, the vast difference in the degree of Jones' and the defendant's participation in the crime here. Jones committed the act for which the defendant was found accountable. The prison term imposed here seems more related to penalizing the defendant for exercising his right to a trial than to punishing socially unacceptable actions.