THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TRAVIS CLARK, Defendant-Appellant.

Second District   No. 2—90—0742

Opinion filed October 22, 1991.—Rehearing denied December 10, 1991.

WOODWARD, J., dissenting.

John M. Nelson, of Rockford, for appellant.

James E. Ryan, State's Attorney, of Wheaton (Eugene J. Kennelly, Assistant State's Attorney, and William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GEIGER delivered the opinion of the court:

The defendant, Travis Clark, was convicted of felony theft (Ill. Rev. Stat. 1989, ch. 38, par. 16—1(a)) and was fined $100, assessed costs and sentenced to 12 months' of conditional discharge. On appeal, the defendant contends he was not proved guilty beyond a reasonable doubt of aiding and abetting the theft of a tile saw machine by a fellow employee and was, at most, an accessory after the fact.

At the trial, Officer Brogan of the Itasca police department testified that he was driving through an industrial area of Itasca on Saturday, December 9, 1989. The businesses were closed that morning. As he pulled his patrol car into the lot of Barco Manufacturing, a passenger car drove out of the lot with a Century Tile truck behind it. Brogan waved to the car, which then pulled alongside him. Brogan asked the driver what he was doing there, to which the man responded, "I was talking to a friend." Brogan asked him if he would stop and talk for a minute, but the driver sped away. Brogan backed his car and gave chase, pursuing him all over the industrial area. The driver found himself in a construction site, put the car in reverse, and then jumped out of the car, which continued moving in reverse until it hit a bulldozer. Brogan and other officers pursued the man on foot until they captured Kenneth Broughton, whom they arrested on a variety of charges.

After the chase began, the defendant, driving the Century Tile truck, pulled out of the Barco lot in a normal fashion. Brogan had not had any communication with the truck's driver. After the arrest of Broughton, Brogan returned to the Barco lot, where he found a boxed tile-cutting machine in a dumpster. The box was not heavy, but the weight was awkwardly distributed. He then drove to the Century Tile warehouse nearby. The manager there identified the machine by the serial number on the box. The defendant was supposed to be driving the truck to the Bolingbrook store. Brogan had a radio message sent out to other police districts.

Brogan further testified that a Bolingbrook police officer took the defendant into custody as he drove the truck into the Bolingbrook store lot. The defendant was transferred back to Itasca, where Brogan interviewed him. The defendant said Broughton had loaded the truck. The defendant also told Brogan that Broughton told the defendant to follow him out of the Itasca store and that they pulled into the Barco lot. The defendant claimed he did not know that the cutter was in the truck until he saw it after he stopped in the Barco lot. The defendant said he did not want to be involved in a theft but thought he was on the spot. He helped Broughton put the box in the dumpster. According to Officer Brogan, Broughton explained to the defendant that Broughton would return and retrieve it.

The defendant also wrote a statement for Officer Brogan, in which the defendant claimed he did not know what was on the truck because he did not load it. When he saw the tile cutter, he was shocked and stunned. The defendant told Broughton to get it off his truck because it did not belong there. The only place the cutter would fit was the dumpster, and defendant then helped Broughton pull it off the truck. The defendant wanted to leave before it appeared as if he were the one stealing it. The defendant said he planned to report the theft as soon as he arrived in Bolingbrook.

Officer Harrison testified that the box he helped Officer Brogan pull out of the dumpster was four feet by three feet by three feet and weighed 100 pounds.

Tom Parks testified as the manager of the Century Tile store. He identified the tile-cutting saw by comparing the serial number to that of his records. The retail price was $995. There were no orders for that machine to be shipped. The defendant was assigned to drive a truck to Bolingbrook with samples of tiles, but he was not supposed to be hauling a tile cutter. Parks gave defendant some gas company charge cards to use if he needed gas for the truck. The defendant had

no business at Barco. No one else had authority to remove the tile cutter from the Century Tile store.

On December 9, Parks had arrived at work at 9 a.m., but other employees had arrived at 7 or 8 a.m. Broughton operated a forklift machine. Broughton also had a part-time job installing tile for a Century Tile customer.

At the close of the State's case, the defendant moved for a directed verdict. The State noted defendant's own statement in which he stated he surmised the tile cutter was stolen but still helped Broughton unload it. The court denied the motion.

The defendant then testified on his own behalf. He was a warehouse worker at Century Tile, pulling orders, cleaning, stacking and doing other tasks. Broughton was a forklift operator there. On December 9, the defendant saw Broughton pulling items off of the racks and moving around the stock. The defendant never talked to Broughton about a tile-cutting saw. After pulling orders and stacking skids, Parks asked the defendant to drive the delivery truck. Driving was not an ordinary part of his job, as he had driven the truck only four times in the 14 months he had worked for Century Tile. Aaron, another employee, loaded the truck, as he usually made the deliveries, and told the defendant it was ready to go. Aaron told the defendant that "they" would buy the defendant breakfast since he was making the delivery and told him to follow Broughton to a McDonald's restaurant.

Broughton led the defendant down a street and then behind a warehouse. Broughton jumped out of his car and went to the back of the truck and opened the unlocked door. The defendant left the cab and walked around to the back to see what Broughton was doing. Broughton said he was taking the saw that was sitting there. The defendant said, "Why are you doing this? It would look like I'm stealing this if the police would pull back here. *** I said I wouldn't let him, but he said I was not going to stop him." Broughton was slightly bigger than the defendant but looked "pretty rough," and the defendant did not want to fight him. The defendant testified that he was stunned and watched Broughton try to load the saw into the trunk of his car. The box got snagged on the back of the truck, and the defendant helped him unsnag it. Broughton put it in his trunk. The defendant did not know what to do at that time; he was stunned.

The box did not fit in the trunk of Broughton's car, and he asked the defendant to help him put it in the dumpster. The defendant helped because Broughton had to go back to work, and the defendant thought he could report it when he got to Bolingbrook. The defendant

got back into the truck and turned it around. By the time the truck was turned, Broughton was gone. As the defendant headed out, he saw Broughton talking to a police officer and then speeding off with the officer in pursuit. The defendant then drove to Bolingbrook, intending to report the incident to Eddie Payne, the manager there, with whom the defendant felt comfortable because Payne was a former manager in Itasca. The Bolingbrook police arrested him as he approached the store, and he was taken back to Itasca, where he made his statements. The defendant was not under any financial hardship, was not taking drugs, and had no need for more money.

On cross-examination, the defendant stated he worked under Parks for 14 months and was on good terms with him. Parks gave him gas cards to use if the truck needed gas. The defendant travelled about 500 yards from Century Tile to the Barco lot; it took just a minute. It took about 35 minutes to travel to Bolingbrook, about 30 miles away. At the Barco lot, Broughton and the officer went speeding in one direction, but the defendant had to go the opposite way. He did not know what was in the truck when he left Century Tile; the cab was separated from the back, and he did not pull open the back door. The defendant delivered tile; he had never delivered tile saws. The tile saw was sitting right by the door to the back of the truck. When the defendant first pulled into the Barco lot, Broughton told him to help remove the saw, but the defendant refused because he thought Broughton was stealing it. The defendant did help push it out when it got snagged. When it did not fit in the trunk, he helped throw it into the dumpster.

The trial court found the defendant guilty on a theory of accountability. The court stated there was no evidence of a conspiracy or plan or anything remotely suggesting the defendant's involvement prior to the events in the parking lot. However, the defendant did aid and abet Broughton by unsnagging the box and then hiding it in the dumpster. The trial court also found the defendant possessed criminal intent. The trial court discounted the theory that the defendant was afraid of the reckless Broughton because there was no evidence that the two, who worked together, had a bad relationship. The court surmised that, if the two were going to a restaurant, there was no reason to follow Broughton into the Barco lot; the defendant could have waited on the street. Instead of returning to work only 500 yards away, the defendant drove to Bolingbrook, allegedly to report the theft. These factors suggested to the trial court that the defendant had criminal intent when he helped Broughton.

On appeal, defendant contends that the evidence does not show that he had the intent to facilitate or promote the commission of the offense as required by section 5—2(c) of the Criminal Code of 1961 (Code) (Ill. Rev. Stat. 1989, ch. 38, par. 5—2(c)). The defendant denies that he aided or abetted the commission of the offense. (See *People v. Bailey* (1989), 188 Ill. App. 3d 278, 288.) The defendant contends that his participation, if any, came *after* the commission of the offense, not *before or during* as required by section 5—2(c). Finally, the defendant argues the trial court erred in denying his motion for a directed finding.

We first note that the function of the court of review is to determine whether, viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact could find the defendant guilty of all the necessary elements beyond a reasonable doubt. (*People v. Pintos* (1989), 133 Ill. 2d 286, 291; *People v. Collins* (1985), 106 Ill. 2d 237, 261.) While some cases involving accomplice liability refer to the reasonable hypothesis of innocence test (see *People v. Darnell* (1990), 214 Ill. App. 3d 345, 363; *People v. Deatherage* (1984), 122 Ill. App. 3d 620), *Pintos* makes clear that the standard to be applied is whether any rational trier of fact could find the defendant guilty beyond a reasonable doubt. *Pintos*, 133 Ill. 2d at 291.

The key to the defendant's argument is the point at which the commission of the offense terminated. Defendant had no knowledge of the removal of the tile saw prior to the opening of the truck in the Barco lot; he could not be convicted of any criminal behavior prior to the time he obtained the mental state of knowledge. If the crime was completed upon the removal of the tile saw from the warehouse by Broughton, the defendant was merely an accessory after the fact and could be at most charged with obstruction of justice; being an accessory after the fact is not a crime in Illinois. (*People v. Jones* (1980), 86 Ill. App. 3d 278, 282.) Unlike a "getaway driver" situation, in this cause we cannot infer the defendant's prior knowledge of the plan by his presence at the conclusion of the offense. Thus, the question before us is whether the defendant knowingly aided Broughton before Broughton completed the offense.

The State charged the defendant by complaint with the crime of theft in violation of section 16—1(a)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1989, ch. 38, par. 16—1(a)(1)), to wit: that the defendant knowingly exerted unauthorized control over property of Century Tile, one tile saw, intending to deprive Century Tile permanently of the property. The terms "obtains or exerts unauthorized control" in section 16—1(a)(1) are defined in section 15—8 of the Code (Ill. Rev.

Stat. 1989, ch. 38, par. 15—8) to include, without limitation, the taking, carrying away, or the sale, conveyance, or transfer of title to, or interest in, or possession of property.

■ Using these definitions, we do not believe that the crime was complete until Broughton removed the box from the truck. In a loose sense of the words, Broughton had exerted unauthorized control over the saw, because Parks testified that nobody had the authority to move the saw from the warehouse to the truck. However, at that point there was no permanent deprivation because the truck was still in the control of Century Tile; the saw would have been mysteriously misdirected to the Century Tile store in Bolingbrook. The theft was completed when Broughton removed the saw from the dominion of Century Tile by putting it in his car trunk. He never had possession until that point. Stopping the truck was part of his plan, which would not have succeeded without the stop; he intended to take the saw, not from the loading dock, but from the truck. The defendant helped unsnag the box knowing that Broughton was stealing, *during* the time in which Broughton was stealing, and knowing that unsnagging the box would help Broughton complete the offense. The defendant knowingly aided and abetted Broughton with the intent to facilitate Broughton's plan, knowing Broughton was stealing. Thus, the defendant became guilty of theft by means of accountability under section 5—2. Furthermore, the trial court's determination that the defendant's helping Broughton hide the box in the dumpster was part of the offense was not manifestly erroneous.

The defendant argues, however, that he did not have the requisite intent when he unsnagged the box. The defendant claims he was shocked and did not know what to do when confronted by the unexpected situation. The defendant also claims that he did not specifically intend to help Broughton commit the offense. The defendant claims his behavior was reasonable in the circumstances of being confronted by a reckless and rough character; a tile saw is not worth a fight. To the extent that defendant raises the defense of compulsion, the trial court determined that the threat of imminent bodily harm was not proved. The record supports the trial court's finding, and we will not reverse it on that ground. *Pintos*, 133 Ill. 2d at 291.

The record also supports the finding that the defendant knew what he was doing when he unsnagged the box. He knew that unsnagging the box would facilitate Broughton's removal of it from the truck, which the defendant knew was theft. A defendant's knowledge may be inferred from the surrounding facts and circumstances (*People v. Whitfield* (1991), 214 Ill. App. 3d 446, 454), and we conclude the

trial court's interpretation of the present facts is reasonable (see 214 Ill. App. 3d at 454). It is the function of the trial court to assess the credibility of the witnesses, the weight to be given their testimony and the reasonable inferences to be drawn from the evidence. (*People v. Creque* (1991), 214 Ill. App. 3d 587, 598.) It is not our function to retry the defendant; the evidence supports the trial court, and we will not reverse it. *Collins*, 106 Ill. 2d at 261.

■ Finally, the defendant argues that the trial court erroneously denied his motion for a directed finding at the close of the State's evidence. However, the defendant waived this argument by introducing his own evidence and not renewing the motion at the close of his own evidence. We also note that the defendant's post-trial motion did not preserve the issue. *People v. Hominick* (1988), 177 Ill. App. 3d 18, 31.

For the above reasons, the order of the circuit court is affirmed.

Affirmed.

DUNN, J., concurs.

JUSTICE WOODWARD, dissenting:

The trial court found the defendant guilty on a theory of accountability. Section 5—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1989, ch. 38, par. 5—2) provides that a "person is legally accountable for the conduct of another when: *** (c) [e]*ither before or during the commission of the offense*, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid such other person in the planning or commission of the offense." (Emphasis added.)

A person cannot be held accountable as a principal for actions occurring after the offense. (*People v. Owens* (1975), 32 Ill. App. 3d 893, 896.) The majority here acknowledges that the issue to be determined is whether the defendant knowingly aided Broughton before the offense was completed. Although concluding that the defendant did in fact aid Broughton during the offense, the opinion also contains the following statements:

> "Using these definitions, we do not believe that the crime was complete until Broughton *removed the box from the truck*. *** The theft was completed when Broughton removed the saw from the dominion of Century Tile by *putting it in his car trunk*." (Emphasis added.) 221 Ill. App. 3d at 309.

Defendant's actions consisted of assisting in the removal of the saw from the trunk of Broughton's car. If, as the majority states, the

theft was complete when Broughton either removed the tile saw from the truck or placed it in his car trunk, defendant's actions clearly took place after the commission of the theft, and, therefore, defendant could not be guilty under an accountability theory.

The majority has correctly stated the facts and the law applicable to the facts but has reached the wrong conclusion. The defendant's conviction should be reversed.