Patrick **GLEASON**, Petitioner–Appellant,

v.

George **WELBORN** and Roland W. **Burris**, Respondents–Appellees.

No. 94–2257.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 4, 1994.

Decided Dec. 19, 1994.

Leonard C. Goodman (argued), Jeffrey B. Steinback, Genson, Steinback, Gillespie & Martin, Chicago, IL, for petitioner-appellant.

Martha E. Gillis, Steven R. Splitt (argued), Office of Atty. Gen., Crim. Appeals Div., Chicago, IL, for respondents-appellees.

Before CUMMINGS, PRATT * and MANION, Circuit Judges.

CUMMINGS, Circuit Judge.

Patrick Gleason was convicted of attempted murder, armed violence and aggravated battery in the Circuit Court of Cook County, Illinois, and given a 40–year sentence. The Appellate Court of Illinois affirmed the conviction but reduced the sentence to 30 years. *People v. Gleason,* 240 Ill.App.3d 249, 181 Ill.Dec. 271, 608 N.E.2d 344 (1st Dist.1992). Gleason subsequently filed a petition for writ of habeas corpus in the court below. The district court denied the petition, resulting in this appeal.

At about 7:15 a.m. on March 12, 1989, Mika Gleason ("Mika"), the petitioner's brother, accompanied by Michael Griffin ("Griffin") and Robert Moreno ("Moreno"), attempted to enter the Stay Out All Night discotheque ("Stay Out"). A doorman refused them entrance, informing Mika that the Stay Out was closed. Mika persisted, claiming that he needed to find someone inside. Mika came out on the short end of the scuffle that ensued between himself and one or more doormen.

Police officer Frank Costa, having left work across the street at 7 a.m., was present in the Stay Out as these events transpired. It is disputed whether Costa helped Mika from the ground or helped put him there, but Costa was at least present for part of the melee and then returned to the bar.

Mika returned to the car with Griffin and Moreno. Mika told Moreno to take him home so that he could get his gun and "come back and kill these guys." Moreno drove Mika to his home and waited in the car with Griffin while Mika went inside. Mika entered the room he shared with petitioner and removed an HK 91 assault rifle from under petitioner's bed. Petitioner woke up, saw his brother's bloodied face and took the weapon

from him. Mika explained that he was going to return to the Stay Out to kill the individuals who had beaten him. Petitioner told his brother to stay put, tucked his .44 magnum pistol into his waistband and went down to the car where Moreno and Griffin were waiting. The three then returned to the Stay Out.

When they arrived, the door to the Stay Out was closed. Petitioner left the car and entered by himself. Once inside, petitioner was physically stopped by a doorman, Jeff Karris. Petitioner knocked Karris to the ground, drew his gun and shot officer Costa, who was seated at the bar. Petitioner then shot Karris as he attempted to stand.

## Discussion

### I. Right to Compulsory Process

■ Petitioner first contends that the trial court denied him the right to compulsory process when it allowed his proposed witness, Robert Moreno, to invoke his right against self-incrimination and not testify. Petitioner's Sixth Amendment right to compulsory process does not override a witness' privilege against self-incrimination. Unless it is perfectly clear from the proof that the testimony cannot possibly have a tendency to incriminate the witness, the trial court may properly allow the witness to invoke his privilege and refuse to testify. *Hoffman v. United States,* 341 U.S. 479, 488, 71 S.Ct. 814, 819, 95 L.Ed. 1118 (1951).

■ Moreno drove petitioner to the Stay Out, waited while petitioner entered and shot the two victims, drove petitioner away, and did not notify the police. From these facts alone, Moreno is prosecutable for obstruction of justice. *People v. Jones,* 86 Ill.App.3d 278, 282, 41 Ill.Dec. 623, 407 N.E.2d 1121 (4th Dist.1980). More importantly, if Moreno knew that petitioner intended to shoot people inside the Stay Out when Moreno drove petitioner there and waited, Moreno would be criminally accountable for petitioner's crimes. *Id.* That Moreno had this knowledge or belief is hardly far-fetched. Moreno saw

---

* The Honorable George C. Pratt of the United States Court of Appeals for the Second Circuit is sitting by designation.

Mika get beaten. After hearing Mika say that he was going to go home and get his gun and kill the people who beat him, Moreno drove Mika home and waited outside in the car presumably while Mika got his gun. The fact that petitioner rather than his little brother emerged from the house did not necessarily alter Moreno's understanding of the purpose of the return trip to the Stay Out. Petitioner claims that because Moreno was with him both immediately before and immediately after the shooting, "Moreno's testimony was critical as to Gleason's state of mind." Br. 23. But Moreno's testimony about his knowledge or understanding of petitioner's state of mind was also potentially incriminating. Moreno's fear of self-incrimination was thus far from "fanciful." *In re Corrugated Container Antitrust Litigation,* 661 F.2d 1145, 1150 (7th Cir.1981), affirmed under the name of *Pillsbury Co. v. Conboy,* 459 U.S. 248, 103 S.Ct. 608, 74 L.Ed.2d 430 (1983).

■ Petitioner argues that there were particular questions which Moreno could have answered which did not pose a danger of self-incrimination so that the trial court's blanket excusal was improper. Petitioner ignores the fact that "[h]ad [Moreno] testified for the defense he would have opened himself up to broad-ranging cross-examination by the prosecution. For having decided to testify, a witness cannot assert the Fifth Amendment privilege with respect to specific questions if they are within the scope of his testimony; he cannot deprive the opposing party of the right to cross-examination." *United States v. Herrera–Medina,* 853 F.2d 564, 567–68 (7th Cir.1988).

■ Petitioner also questions the adequacy of the trial court's examination of Moreno before the court excused him from testifying. The trial judge asked Moreno if he had told the state and defense that he did not want to testify for fear of self-incrimination. Moreno said that he had. The judge then asked if after talking to his attorney, Moreno felt there was the potential for self-incrimination. Moreno answered in the affirmative.

Judge Banks then denied petitioner's motion to compel Moreno's testimony with the following explanation:

I have heard all of the State's witnesses and testimony already. And Mr. Moreno's name has been mentioned many times in this case. And in evaluating the case, taking testimony in the way it was mentioned, how it was mentioned, I believe along with the witness here that if he did take the stand, whatever he said knowing the potential questions of both state and defense, that he would, if he testified, incriminate himself and open himself to possible charges against him.

Def.Br. 12. In questioning the propriety of the judge's actions, the petitioner ignores the teaching of *Hoffman,* that "[t]he trial judge in appraising the claim 'must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence.'" *Hoffman,* 341 U.S. at 487, 71 S.Ct. at 818 (citation omitted). A detailed examination of the witness is neither required nor appropriate: "If the witness, upon interposing his claim were required to prove the hazard in the sense in which a claim is usually required to be established in court, he would be compelled to surrender the very protection which the privilege is designed to guarantee." *Id.* at 486, 71 S.Ct. at 818. From his knowledge of the State's case Judge Banks knew that Moreno's fear of self-incrimination was not "fanciful." Further inquiry was therefore unnecessary.

## II. Bias of Trial Judge

Petitioner asserts that in his bench trial his due process right to a fair trial was denied because Judge Banks, the trier of fact, was biased against him. This argument was rejected by the Appellate Court of Illinois. *People v. Gleason,* 240 Ill.App.3d 249, 256, 181 Ill.Dec. 271, 275–76, 608 N.E.2d 344, 348–49 (1st Dist.1992),[1] and by Judge Williams below. We agree with those rulings.

Petitioner cites numerous acts which allegedly show Judge Banks' bias.

---

**1.** The Illinois Supreme Court denied the petition for leave to appeal. *People v. Gleason,* 149 Ill.2d 654, 183 Ill.Dec. 866, 612 N.E.2d 518 (1993).

## A. Trial judge's questioning of witnesses

### 1. Robert Moreno

Petitioner claims that the alleged inadequacy of the trial judge's examination of Moreno with respect to his claim of privilege evidences the trial judge's bias. Since we have already found that Judge Banks' examination of Moreno was adequate and appropriate under the circumstances, we need not consider this claim further.

### 2. Clarence Gleason

■ The trial judge's two other allegedly "improper interrogations" (Def.Br. 26) occurred at the sentencing hearing. The first involved petitioner's father, Clarence Gleason, who testified for his son in mitigation. During the hearing the following exchange occurred:

DEFENSE COUNSEL: Was there in fact an argument in your house on that particular morning?

CLARENCE GLEASON: Yes, my kid [Mika] came home after being beaten up by a couple of those guys over there.

THE COURT: Were you there, sir?

A: No.

THE COURT: So you don't know that?

A: Okay, okay, forget it. He came home beaten up, that I know.

THE COURT: That you know.

Pet.Br. 26–27. Petitioner claims that the court's questioning was improper and "served no purpose other than to discredit the defendant's father." *Id.* First, since this occurred at the sentencing hearing following a bench trial, there was no one in front of whom the witness could be discredited except the judge himself who asked the questions. Second, because the witness was attempting to testify to facts of which he had no personal knowledge, the trial judge's questioning, though perhaps unnecessary, was a proper attempt to eliminate possible confusion, particularly with respect to Clarence Gleason's claim that it was "a couple of those guys over there" who beat his son.

### 3. Patrick Gleason

■ The third and final allegedly improper interrogation occurred when Judge Banks interrupted the petitioner's allocution during sentencing and asked him where he got the .44 magnum he used in the assaults. The judge also asked petitioner if he was aware that the .44 magnum was one of the most powerful handguns available. Petitioner's knowledge of the power of his chosen weapon suggests that the severe injuries suffered by his victims were clearly foreseeable by the petitioner, a consideration obviously relevant to the sentencing judge. The court's questioning of petitioner on this matter was therefore neither inappropriate nor evidence of bias.

## B. Evidentiary rulings

Petitioner further contends that the trial court's evidentiary rulings show bias against the petitioner.

### 1. Exclusion of Michael Griffin's probationary status

■ The trial judge refused to admit evidence that the State's witness, Michael Griffin, was on probation for a misdemeanor charge of driving under the influence ("DUI") at the time of trial. Petitioner now argues that Griffin's probationary status may have evidenced an illicit motive for his testifying on behalf of the state. Petitioner, however, made no such argument at trial, arguing instead that Griffin's DUI conviction implied that Griffin's testimony was suspect for want of sobriety. Griffin, however, had already testified to his propensity for drunkenness. Furthermore, when the issue was raised the prosecution stipulated to Griffin's probationary status for the DUI conviction. The trial judge's exclusion of further evidence on the issue was neither an abuse of discretion nor evidence of bias.

### 2. Admission of evidence of the severity of the victims' injuries

■ Petitioner next argues that evidence of the severity of the victims' injuries was "irrelevant and prejudicial" and its admission "further demonstrates [the trial court's] bias." Br. 35. However, as Judge Williams

pointed out below, evidence of the severity of the wounds "was relevant to Gleason's crimes because: A person who intentionally or knowingly causes great bodily harm, or permanent disability or disfigurement commits aggravated battery" under Illinois law. Pet. App. 16–17.

*C. Imposition of the extended term sentence*

 Petitioner's final alleged evidence of bias was the trial court's imposition of a 40-year extended term sentence. The Appellate Court of Illinois, finding that Gleason had not acted "in an exceptionally brutal or heinous manner," reduced the sentence from 40 years to the maximum term of 30 years for attempted murder. *Gleason,* 240 Ill.App.3d at 257, 181 Ill.Dec. 271, 608 N.E.2d 344. That a majority of the Appellate Court disagreed with the trial judge's determination of heinousness does not imply that the trial judge was biased. Indeed, one of the three justices of the Illinois appellate court agreed with the trial judge that Gleason's conduct was "exceptionally brutal and heinous." *Id.* at 259, 181 Ill.Dec. 271, 608 N.E.2d 344 (Justice Campbell dissenting).

*III. Imposition of 30-year sentence*

 Petitioner challenges the sentence of 30 years in prison imposed by the Appellate Court of Illinois for two counts of attempted murder, four counts of aggravated battery and two counts of armed violence. Petitioner contends that the sentence is disproportionate and the result of a constitutionally flawed process. We reject both contentions.

As Judge Williams observed in the court below, a federal court will not normally review a state sentencing determination which, as here, falls within the statutory limit. *Williams v. Duckworth,* 738 F.2d 828, 831 (7th Cir.1984). There has been no showing that the sentencing court lacked jurisdiction to impose this term or committed a constitutional error making the sentence fundamentally unfair. *Bean v. United States,* 679 F.2d 683, 685 (7th Cir.1982).

The reduced sentence was within the statutory range and has not been shown to be "fundamentally unfair" through constitutional error. The Appellate Court of Illinois considered mitigating circumstances in reducing petitioner's sentence from 40 years to 30. *Gleason,* 181 Ill.Dec. at 276, 608 N.E.2d at 349. The sentence will not be disturbed.

The district court's decision is affirmed.